UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

RAMONE BRADLEY

No. 24 CR 503

Hon. Matthew F. Kennelly

**GOVERNMENT'S CONSOLIDATED
RESPONSE TO DEFENDANT'S POST-TRIAL MOTION**

On July 28, 2025, following four days of evidence, a jury convicted defendant Ramone Bradley of conspiracy to commit carjackings, and attempted carjacking. Dkt. 164. Bradley now moves for acquittal, pursuant to Federal Rule of Criminal Procedure 29. Dkt. 175. Bradley's sole argument at trial and in his post-trial motion is that he did not possess the intent to harm the victim if he did not comply. The jury rejected this argument and convicted Bradley based on the abundant evidence of his guilt—including Bradley's use of a loaded gun with a live round in the chamber during the attempted carjacking of Victim B. The jury's decision was rational and supported by the evidence. As such, the Court should deny Bradley's motion.

## I. EVIDENCE PRESENTED AT TRIAL

At trial, the government presented substantial evidence that Bradley worked with his co-defendants to use loaded guns to commit two carjackings. Specifically, the government presented surveillance footage showing Bradley's participation in both carjackings. GX 100, 101.[1] In the first carjacking, Bradley was captured on

---

[1] Defendant's motion did not cite to the trial transcripts, and in its response, the government primarily relies on the government's exhibits admitted at trial and referred to here as GX.

1

surveillance footage at the Citgo gas station seated in the front passenger seat of the SRT, watching as his co-defendant Marquell Davis and another co-conspirator carjacked Victim A at gunpoint. GX 100. In the second carjacking, the surveillance footage from the BP gas station captured Bradley exiting the rear passenger seat of the SRT with a black firearm drawn. GX 101. Bradley pointed the firearm at Victim B's head, before slipping and falling to the ground. *Id.* Bradley then got back up and continued to point his firearm at Victim B until he got into the driver's seat of Victim B's car. *Id.* While Bradley was pointing his firearm at the victim, Davis exited the SRT and began to point his own firearm at Victim B. Davis then went through Victim B's pockets and took his keys and wallet before joining Bradley in Victim B's car. Surveillance footage captured Bradley attempting to drive off in Victim B's car before ultimately abandoning the car and reentering the waiting SRT. *Id.* Victim B testified that he believed Bradley would shoot him if he did not comply with the carjacking.

Approximately one hour after the attempted carjacking of Victim B, helicopter video and body worn camera footage showed that Bradley and his two co-defendants, Edmund Singleton and Davis, were arrested after running from the SRT and police. GX 102, 200, 202, 205. Officers testified that they recovered three firearms near the location of defendants' arrest: (1) a camouflage grip Glock Model 19 9mm pistol with a front grip and a Glock "switch;" (2) a snakeskin Lone Wolf R&D handgun; and (3) a Glock 30 Gen 4 .45 caliber pistol. GX 500A-E, 501A-C, 502A-E. The government also introduced testimony from Chicago Police Department Evidence Technician Vincent Cervenka that all three firearms were loaded and had a live round in the chamber.

Officers testified, consistent with the body worn camera footage presented, that they recovered a key fob associated with the SRT near the location of Singleton's arrest, a key fob for the Infiniti belonging to Victim A from Davis's pocket, and Victim B's driver's licenses from Davis's backpack. GX 201B, 202A. Body worn camera footage showed that, at the time of their arrest, Davis and Bradley were wearing clothing consistent with the clothing worn by the carjackers and Singleton was wearing a black ski mask. GX 200, 202, 204, 205. Body worn camera footage also showed that officers recovered two cell phones from Singleton, three cell phones from Davis, and a cell phone from Bradley. GX 200, 202, 204, 205.

The government introduced pictures from one of Singleton's phones (GX 603) featuring Singleton, Bradley, and Davis, wearing clothes matching the carjackers, and brandishing a black Glock, a snakeskin gun, and a camouflage Glock identical to the guns recovered at the time of their arrest. GX 603C-D. The government also introduced pictures from Bradley's phone (GX 602) featuring Bradley wearing clothing matching the carjackers while standing in front of the SRT. GX 602F-G. Bradley's phone also contained numerous pictures and videos of Davis wearing the same clothing worn during the carjackings and holding the same tan snakeskin gun he used during the robberies. GX 602C, 602E, 602K, 602L.

The government then introduced cell tower location data from defendants' phones. GX 900, 900A. FBI Special Agent Shanna Fischer testified that Bradley's phone used the same cellular tower as Singleton at the same approximate time, just a few minutes after the carjacking of Victim A. GX 900A. Bradley used that cellular

3

tower to call Davis's phone, which in turn was using a cellular tower in close proximity to the tower used by Bradley and Singleton. *Id.* The cellular tower data was consistent with Bradley and Singleton traveling together after the carjacking in the SRT and calling Davis, who was in Victim A's Infiniti.

The government also introduced a music video in which Singleton, Bradley, and Davis were captured holding the same firearms used to commit the carjackings. GX 800. The music video also featured the SRT that was used as a getaway car during the carjackings. *Id.* Finally, forensic expert witnesses testified about the evidence connecting Bradley to the guns used to commit the carjackings. The DNA expert testified that DNA found on the black Glock recovered after his arrest was 30 nonillion times more likely to be Bradley's DNA and the latent print expert testified that Bradley's fingerprints were found on the magazine itself and on the tape on the magazine of the camouflage Glock.

## II. SUFFICIENT EVIDENCE SUPPORTS THE GUILTY VERDICT

### A. Legal Standard

A motion for judgment of acquittal challenges the sufficiency of the evidence to sustain a guilty verdict against a defendant. Fed. R. Crim. P. 29. A defendant faces "a nearly insurmountable hurdle" in contending that the jury had insufficient evidence to find him guilty. *United States v. Miller*, 782 F.3d 793, 797 (7th Cir. 2015) (internal marks omitted). The court must "afford great deference to jury verdicts, view the evidence in the light most favorable to the jury's verdict, and draw all reasonable inferences in the government's favor." *United States v. Brown,* 973 F.3d 667, 681 (7th Cir. 2020) (citing *United States v. Moreno*, 922 F.3d 787, 793 (7th Cir.

2019)). The jury's verdict may be set aside on the grounds of insufficient evidence "only if no rational trier of fact could have agreed with the jury." *Brown,* 973 F.3d at 681 (citing *Cavazos v. Smith*, 565 U.S. 1, 2 (2011)).

### B.     The Evidence Proved Bradley's Intent to Cause Bodily Harm

Bradley's sole argument is that the government failed to establish that he had the intent to cause serious bodily harm or knew that his fellow carjackers had such intent. Dkt. 175 at 5. This argument has no merit and is contradicted by the evidence in this case and clear Seventh Circuit law.

To sustain a conviction for carjacking, the government must prove that the defendants possessed a "conditional intent to do the driver harm had he not complied with the defendants' demands." *United States v. Hunter*, 932 F.3d 610, 622 (7th Cir. 2019). During trial, the government presented evidence that Davis, Bradley, and Singleton pointed loaded guns with live rounds at their victims to force them to surrender their cars. During the first carjacking, Singleton boxed in the victim using the SRT, and Bradley then sat in the SRT's passenger seat, watching from a few feet away, Davis jammed his gun into Victim A's back with such force that he left a bruise and pointed his gun at Victim A. GX 100. During the second carjacking, surveillance showed the SRT boxing in Victim B and then Bradley exiting the vehicle and pointing his loaded Glock at the victim from no more than 2-3 feet away. GX 101. Victim B fell to the ground in fear and testified that he believed the carjackers would shoot him if he did not comply. Under Seventh Circuit precedent, evidence, like that presented at trial here, that carjackers pointed a loaded gun is sufficient for a jury to convict. *See,*

*e.g. United States v. Jones*, 188 F.3d 773 (7th Cir. 1999) (upholding carjacking conviction because defendants pointed a loaded gun at the victim).

Aside from the loaded guns, defendants here also physically harmed one of the victims—Davis caused bruising to the first carjacking victim by jamming the gun in his back. Bradley observed Davis's violent conduct from a few feet away. This is strong evidence that not only did Bradley intend to cause harm if need be, but that he was well aware of his co-conspirators intent to cause harm. *United States v. Adams*, 265 F.3d 420, 425 (6th Cir. 2001) (adopting general rule that "physically touching a victim with a weapon, standing alone . . . indicates an intent on the part of the defendant to act violently" as required by § 2119); *Hunter*, 932 F.3d at 623 (intent element satisfied in part because one of the carjacking defendants pistol-whipped a victim).

Bradley claims that the lack of evidence about the specific words he used to threaten Victim B somehow shows he did not intend to harm the victim when he pointed a loaded gun at him. Dkt. 175 at 7-8. But verbal threats are not necessary for a jury to infer that a defendant had the intent to harm a victim if they did not comply with a carjacking. Indeed, as the Fourth Circuit recently held, while "verbally threatening the victim can certainly help establish intent, there is no bar to finding intent in cases that lack verbal threats. Indeed, it is difficult to imagine a more effective threat than holding a gun to someone's head." *United States v. Small*, 944 F.3d 490, 500 (4th Cir. 2019) (upholding carjacking conviction even without verbal threats because defendant's "wielding a gun provides a strong indication of intent to

6

inflict bodily harm if met with resistance, particularly when the perpetrator did not merely display a gun but rather pointed the gun at the victim in demanding car keys and other possessions.").

Bradley next argues, citing a Supreme Court case holding that even an unloaded gun can be a dangerous weapon, that just because "a firearm is loaded does not make it more dangerous." Dkt. 175 at 8 (citing *McLaughlin v. United States*, 476 U.S. 16 (1986))). He claims that "a loaded firearm" is not evidence of intent. This argument fails both logically and as a matter of law. The government agrees that pointing any gun, loaded or not, as defendant did here, is evidence of an intent to cause bodily harm sufficient to support a conviction. *See, e.g.*, *United States v. Wilson*, No. 24-2903, 2025 WL 2694096, at *2 (3d Cir. Sept. 22, 2025) ("Though the carjackers did not fire the guns, use other force, or utter threats, this brandishing [of guns] and touching were enough. Whether the weapons were loaded or not, the jury could infer intent to seriously harm."). But contrary to defendant's argument, the evidence that Bradley's gun was loaded is highly relevant because it "goes directly to the [his] ability to carry out his threats—an essential factor to be considered in the overall calculus of whether the defendant possessed sufficient intent to kill or cause serious bodily harm." *United States v. Fekete*, 535 F.3d 471, 481 (6th Cir. 2008). Here, if Bradley and his co-conspirators did not intend to cause death or serious bodily injury in order to ensure their plan succeeded, there would be no need to possess loaded guns, let alone loaded guns with live rounds in the chamber. The evidence of a loaded gun was sufficient for the jury to infer Bradley's intent. *United States v. Gardner*, 819

F. App'x 335, 340 (6th Cir. 2020) (evidence that gun recovered after carjacking was loaded satisfies specific intent requirement).

The cases Bradley cites are inapposite. He cites *Fekete*, but in that case, the Sixth Circuit noted that a defendant who purposefully "unloaded the firearm" before committing a carjacking might have an argument that the gun was an "empty threat." 535 F.3d at 481. But the court ultimately upheld defendant's carjacking conviction because the circumstantial evidence that defendant's gun was loaded supported an inference of conditional intent to cause bodily harm. *Id.* Here, like in *Fekete*, there was no evidence that the gun Bradley used was unloaded, and his use of a loaded gun is evidence of his intent.

Defendant also cites *United States v. Feliciano-Candelario*, 128 F.4th 5, 12 (1st Cir. 2025), and *United States v. Coyle*, 309 F.3d 1071 (8th Cir. 2002). In *Coyle* and *Candelario*, the courts considered whether defendants who pled guilty to carjacking were subject to a three-level enhancement for brandishing a knife or a four-level enhancement for "otherwise using" a knife during the carjackings. These cases simply have no relevance here—there were no trials, the sufficiency of the evidence was not at issue, there were no guns involved, and the courts certainly did not consider whether a loaded gun was evidence of intent.

In sum, based on the evidence presented, the jury properly concluded that Bradley possessed the intent to cause death or serious bodily injury to Victim B if he did not comply with Bradley's demands. As such, viewing the evidence in the light most favorable to the jury's verdict and drawing all reasonable inferences in the

8

government's favor, there was sufficient evidence to convict defendant of conspiracy to commit carjacking and attempted carjacking.

## III.     CONCLUSION

For the foregoing reasons, defendant's consolidated post-trial motion should be denied.

                                        Respectfully submitted,

                                        ANDREW S. BOUTROS
                                        United States Attorney

                              By:     /s/ *Elie Zenner*
                                        ELIE ZENNER
                                        SIMAR KHERA
                                        Assistant U.S. Attorneys
                                        219 South Dearborn St., Rm. 500
                                        Chicago, Illinois 60604
Dated: October 15, 2025              (312) 353-8449