'UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 24 CR 503 |
| v. | ) | |
| | ) | Hon. Matthew F. Kennelly |
| RAMONE BRADLEY | ) | District Judge |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S
OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT**

On October 14, 2025, defendant Ramone Bradley filed his sentencing memorandum and objections to the Presentence Investigation Report ("PSR"). Dkt. 215. The Court should overrule defendant's objections.

**I.  DEFENDANT'S BASE OFFENSE LEVEL WAS CORRECTLY CALCULATED**

**A.  Defendant Is Accountable for the Conspiracy to Commit Carjackings**

According to Guideline § 1B1.2(d), a conviction on a count of conspiracy to commit more than one offense shall be treated as if the defendant had been convicted on a separate count of conspiracy for each offense that defendant conspired to commit. Here, the indictment charged defendant with conspiracy to commit the carjackings of Victim A and Victim B, as well as the attempted carjacking of Victim B. Dkt. 1. At the conclusion of trial, a jury convicted defendant of both counts. Dkt. 162. Defendant argues, however, that because he was not separately charged with the carjacking of Victim A, a jury did not determine that he committed the carjacking of Victim A beyond a reasonable doubt, and he should not receive offense level points based on that carjacking. Dkt. 215 at 11. The government disagrees.

1

Application Note 4 to Guideline § 1B1.2 states that in cases where the verdict is not clear as to which offense was the object of the conspiracy, Guideline § 1B1.2(d) should only be applied to an object offense "if the court, were it sitting as a trier of fact, would convict the defendant of conspiring to commit that object offense." The Seventh Circuit has held that the sentencing judge must use the reasonable-doubt standard. *United States v. Jett*, 982 F.3d 1072, 1078 (7th Cir. 2020).

Here, the evidence presented at trial proved beyond a reasonable doubt that defendant conspired to commit the carjacking of Victim A. Photographs from defendants' phones showed defendant with his co-defendants holding the guns used in the carjackings days before the carjackings. Surveillance footage from the Citgo gas station captured defendant in the front passenger seat of the stolen Jeep SRT that was used as a getaway car. Defendant was captured on video watching with the window down as his co-defendant Marquell Davis and another co-conspirator carjacked Victim A at gunpoint just a few feet away. Defendant and Singleton waited in the Jeep SRT until Davis completed the carjacking in case Davis needed to flee in the SRT. Call records showed defendant had phone calls with Davis in the minutes after the carjacking as defendant and Singleton fled in the Jeep SRT while Davis fled in the carjacked Infiniti.

In the second carjacking, a few hours later, surveillance showed defendant and his co-defendants using the same stolen Jeep SRT as a getaway car and boxing in Victim B. This time, defendant got out of the car and brandished a firearm at Victim B before attempting to flee in Victim B's car. Later that night, after defendant was

arrested, law enforcement recovered the firearm defendant possessed during the carjackings—a loaded Glock 30 with a live round in the chamber. Defendant's DNA was found on the Glock 30.

Based on all this evidence, there is sufficient evidence for the Court to find beyond a reasonable doubt that defendant conspired to commit the carjacking of Victim A and Victim B. In similar situations, courts regular hold defendants accountable at sentencing for offenses that were part of the conspiracy but were not charged or even for which they were acquitted at trial. *United States v. Jett*, 982 F.3d 1072, 1078–79 (7th Cir. 2020) (upholding sentence that applied offense level for robberies and attempted robberies included in conspiracy even though robberies were uncharged and attempted robbery had been dismissed after remand because surveillance footage and cell phone data proved beyond a reasonable doubt defendants committed the crimes); *United States v. Jackson*, 167 F.3d 1280, 1285–86 (9th Cir. 1999) (upholding sentencing of defendant based on drug weight in conspiracy even though he was acquitted on substantive drug distribution count because conspiracy and substantive count have different elements and evidence proved beyond reasonable doubt that defendant conspired to distribute the full drug amount).

The cases defendant cites do not apply here. Defendant mistakenly relies on cases involving disputes over the application of the Armed Career Criminal Act, which resulted in a higher statutory maximum or minimum sentence, not cases where a defendant was sentenced within the statutory guidelines range based on

3

offense conduct in a conspiracy count. *See Shepard v. United States*, 544 U.S. 13 (2005) (addressing the application of a 15-year minimum mandatory sentence under 18 U.S.C. § 924(e) at sentencing based on defendant's prior criminal convictions); *Erlinger v. United States*, 602 U.S. 821 (2004) (holding defendant was entitled to a jury determination on prior convictions when his maximum sentence increased from 10 years to life pursuant to the ACCA); *Descamps v. United States*, 570 U.S. 254 (2013) (addressing whether defendant's prior burglary conviction subjected him to an enhanced sentence under ACCA); *United States v. Grimes*, 22-3195, 2024 WL 4986559 (7th Cir. Dec. 2, 2024) (remanding to determine if defendant's Fifth Amendment rights were violated because the § 924(e) enhancement was not included in indictment). These cases do not apply here because defendant's liability for the first carjacking only impacts his offense level, not his statutory maximum or minimum sentence. The requirement of a jury finding only applies to findings that change the statutory maximum not to findings that alter defendant's offense level or Guidelines range.

In sum, because defendant conspired with his co-defendants to commit both carjackings, his base offense level should account for "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant[.]" U.S.S.G. § 1B1.3(1)(A). Thus, the base offense level for Count One was correctly calculated by Probation. PSR ¶ 29.

### B. Defendant is not entitled to a three-level reduction pursuant to Guideline § 2X1.1(b).

Defendant next argues that he is entitled to a three-level decrease on Count Two pursuant to Guideline § 2X1.1(b). Dkt. 215 at 12. Defendant is wrong. Guideline § 2X1.1(b)(1) allows for a three-level decrease to the offense level if the offense is an attempt <u>unless</u> "the defendant completed all the acts the defendant believed necessary for successful completion of the substantive offense[.]" Here, defendant pointed a loaded firearm at Victim B, he and his co-defendant took Victim B's car keys and wallet at gunpoint, he got into Victim B's car, and he tried to drive off. Defendant was only foiled by his inability to operate Victim B's specially outfitted hand controls. Put simply, defendant committed all of the acts needed to carjack Victim B.

In similar cases, the Seventh Circuit has declined to apply the offense level decrease under Guideline § 2X1.1(b). For example, in *United States v. Hernandez*, 73 Fed. App'x. 902, 904 (7th Cir. 2003), the defendant entered a bank with an armed accomplice and demanded money. The bank employees did not comply with his demand, so defendant fled. *Id*. The Seventh Circuit rejected Hernandez's argument that "he did not complete all the necessary acts for a bank robbery, because he did not get any money" and held that Guideline § 2X1.1(b)(1) did not apply to him because "he had essentially completed the offense before he fled from the bank." *Id*. at 903. *See also United States v. Emmett*, 321 F.3d 669, 673-74 (7th Cir. 2003) (affirming the district court's refusal to apply § 2X1.1(b)(1) because although defendant failed to successfully complete both bank robberies, it did not mean "that he did not think he

5

was doing everything he needed to do in order to succeed."); *United States v. Shakur*, 7 Fed. App'x. 289 (4th Cir. 2001) (holding that the § 2X1.1(b)(1) reduction did not apply when defendant could not complete the carjacking because the car was equipped with an anti-theft device because the "commentary to § 2X1.1 explicitly states that the reduction is intended for cases in which the defendant is arrested well before he has completed the acts necessary to commit the offense."); *United States v. Owens*, 20 Fed. App'x. 785, 788 (10th Cir. 2001) (holding that the § 2X1.1(b)(1) reduction did not apply where defendant would have successfully completed the carjacking but for the victim speeding away.).

Defendant completed all the acts necessary to complete the charged carjacking and he should be held accountable as such.

## II. THE ENHANCEMENT UNDER § 3A1.1(B)(1) APPLIES

In his sentencing memorandum, defendant objected to the application of the two-level enhancement pursuant to Guideline § 3A1.1(b)(1) because "no evidence indicates that Victim B was chosen due to his vulnerability." Dkt. 215 at 13. This argument is unsupported by the evidence. The Court correctly applied the vulnerable victim enhancement to defendant Marquell Davis, and it should do the same here.

As surveillance footage from the BP gas station depicts, defendant and his co-defendants drove by the BP gas station in their getaway car and stopped at the traffic light while Victim B got his crutches and got out of the car, waiting there even though the traffic light turned green—as evidenced by a car approaching from the opposite direction. After Victim B exited the car with his crutches, the getaway car drove off, only to return a few minutes later as Victim B was attempting to reenter his car.

6

Based on this evidence, it is more likely than not that defendant (and his co-defendants) observed Victim B exit the car with crutches before deciding to carjack him.

Even if the Court assumes that defendant did not see defendant's crutches when the getaway car was stopped at the light, he certainly saw Victim B's crutches when he exited the car and approached Victim B. He knew Victim B used crutches when Victim B fell to the ground to get away from defendant and his gun. And defendant knew Victim B used crutches when he tried to drive off in Victim B's car. From the time defendant observed Victim B from the getaway car until the completion of the carjacking, defendant had "ample time to observe" that the victim was vulnerable and "either back off or proceed with the assault based on his observation of the victim." *United States v. Billingsley*, 115 F.3d 458, 464 (7th Cir. 1997) (applying enhancement where carjacker accosted elderly victim after watching him walk from garage and defendant never withdrew from attack).

Defendant argues that there is "no evidence indicating [Victim B] was selected due to any specific weaknesses" and he improperly relies on Application Note 2 to Guideline § 3A1.1 in support of his argument. Dkt. 215 at 13-14. However, Application Note 2 merely provides examples of situations where the enhancement would apply or not apply. Guideline § 3A1.1 does not require that defendant intentionally targeted a victim due to their vulnerability. *See United States v. Parolin*, 239 F.3d 922, 927, n. 2 (7th Cir. 2001) ("As amended on November 1, 1995, § 3A1.1 does not require a showing of targeting.").

7

### III. THE ENHANCEMENT UNDER § 3C1.2 APPLIES

In his sentencing memorandum, defendant argues that the two-level enhancement pursuant to Guideline § 3C1.2 for reckless endangerment during flight should not apply because he did not willfully participate in the getaway chase, and he did not discard his firearm in plain view. Dkt. 215 at 15-16. The government disagrees because the totality of the circumstances show his recklessness.

Under Application Note 5 of § 3C1.2, defendant is accountable for his own conduct, as well as conduct that he aided or abetted, counseled, commanded, or procured. The Seventh Circuit addressed this issue in *United States v. Rivers*, 108 F.4th 973, 981-82 (7th Cir. 2024) and upheld the district court's application of the § 3C1.2 enhancement based on the totality of the circumstances surrounding Rivers' flight. The defendant in *Rivers* committed a carjacking with his co-defendant and then proceeded to lead law enforcement on a high-speed chase in the carjacked vehicle, before the car became disabled, at which point, Rivers fled from police on foot. *Id*. at 976. Like defendant in the instant matter, Rivers was not the driver of the car. *Id*. The district court applied the § 3C1.2 enhancement over Rivers' objection, finding that Rivers actively participated in the carjacking and flight, and the carjackers' conduct after the carjacking created a great risk of bodily injury to others. *Id*. at 982. The district court emphasized that both defendants worked together to flee. *Id*. The district court also held that Rivers' subsequent "escape on foot could alone support application of the enhancement." *Id*.

The Seventh Circuit upheld the application of the enhancement. The Court held that the district court was permitted to consider the escape as a single

8

continuous episode and that it was proper to consider the totality of the circumstances in determining that Rivers actively participated in endangering lives during the car chase and his flight on foot. *Id*. The Seventh Circuit held that Rivers' "own conduct indicates a desire to evade capture and a willingness to endanger others to achieve that goal," from which the court could infer an active participation in the reckless flight. *Id*. at 983.

*Rivers* applies here. In this case, defendant conspired with his co-defendants to commit two separate carjackings. During the second carjacking, defendant exited the getaway car and approached Victim B while brandishing a gun before attempting to drive off in Victim B's car. After unsuccessfully trying to flee in the carjacked vehicle, defendant got back into the getaway car, which was waiting for him in case the carjacking went wrong. Approximately one hour later, the getaway car was spotted by law enforcement and proceeded to lead law enforcement on an approximately 20-minute chase, during which the getaway car ran red lights, traveled at high rates of speed, drove between lanes of traffic, and used evasive maneuvers. When the getaway car eventually stopped under a viaduct, defendant and his co-defendants got out of the car and took off running. Defendant ran through an alley and then through a residential backyard, ditching his firearm in a garage.

Under the totality of circumstances, defendant recklessly endangered others during his flight from law enforcement. It is reasonable to infer that he actively participated in the high-speed chase, given his flight back to the getaway car after the failed carjacking and his flight from the getaway car later that night. Like in

9

*Rivers*, defendant's "own conduct indicates a desire to evade capture and a willingness to endanger others to achieve that goal." *Id.* at 983. But even if the car chase was not enough to warrant the enhancement alone, defendant's other actions confirm that the enhancement applies.

Defendant's firearm was loaded with a live round in the chamber. He fled with that firearm through an alley before running into a residential backyard, while police surrounded him, and closed in mere feet away. In fact, police were so close to defendant that Officer Matthew Lucki saw defendant running through the alley and he began to chase after defendant. After running away from Officer Lucki, defendant ditched his loaded firearm in a garage behind a residence. Defendant was then arrested in the yard for that same residence.

Contrary to defendant's assertion (Dkt. 215 at 16), defendant's firearm was left in a public place and in plain view. It was not within a fenced in backyard. *Id*. It was in a garage that was accessible through both the publicly accessible alley because of the hole in the garage and by anyone who had access to the garage. The firearm could have easily been found in the hole in the garage by anyone walking through the alley, as evidenced by how easily the firearm was spotted by Officer Lukasz Fronckiel. *See United States v. Rogers*, 423 F. App'x 636, 640 (7th Cir. 2011) (defendant "discarded a loaded revolver in a residential neighborhood at night, creating a substantial risk that someone would find it and get hurt."); *United States v. Lard*, 327 F.3d 551, 553 (7th Cir. 2003) ("simply leaving a weapon in a public place can amount to reckless endangerment"). The totality of the circumstances, including defendant's flight in the

getaway car, his flight on foot with a loaded gun and police nearby, and his discarding of the gun in a publicly accessible garage, more than justify the application of the enhancement.

## IV.   DEFENDANT DID NOT ACCEPT RESPONSIBILITY

In his sentencing memorandum, defendant argues that he is entitled to a two-level reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 because at trial, he did not deny attempting to take Victim B's car, but instead argued that he did not commit a carjacking since he did not have the intent to harm his victim if he did not comply. Dkt. 215 at 17. Defendant's argument is without merit.

Application Note 2 to Guideline § 3E1.1 provides:

> This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse. Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction. In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (e.g., to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct). In each such instance, however, a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct.

Here, while defendant did admit his involvement in attempting to take Victim B's car at trial, his defense at trial was not a mere legal challenge to the applicability of statute. At trial, defendant claimed that, despite evidence showing he pointed a loaded gun at his victim, there was not a sufficient factual basis for the jury to conclude he intended to harm his victim if he refused to comply. Defendant claimed

11

he only committed a car theft, and he thus denied an "essential factual element of his guilt." He should not get credit for acceptance of responsibility.

In similar cases, the Seventh Circuit has consistently refused to grant defendant's acceptance of responsibility credit. In *United States v. Williams*, 202 F.3d 959, 962–63 (7th Cir. 2000), for example, the sole defense at trial was that the defendant did not knowingly distribute drugs when he gave a box containing drugs to an undercover agent. The defendant claimed that he was entitled to acceptance credit because he only contested his subjective knowledge because that was "a necessary predicate to his legal challenge." *Id*. The Seventh Circuit rejected defendant's argument because his defense involved challenging the "*factual* support" for his knowledge of the drugs. *Id*. The Court held that "knowledge, either objective or subjective, is a factual element of the offense with which [defendant] was charged." *Id*. As such, he "was "denying [an] essential factual element of guilt and [was] ineligible to receive a reduction for acceptance of responsibility." *Id*.; *see also United States v. Osmani*, 20 F.3d 266, 269–70 (7th Cir. 1994) (denying acceptance of responsibility reduction to a defendant who maintained he had no knowledge that there was over $4,000,000 worth of heroin in the suitcase he was carrying because defendant was challenging an "essential factual element of guilt").

The reasoning from *Williams* applies here. Nothing about defendant's pre-trial conduct showed acceptance of responsibility. He did not confess when he was arrested and did not plead guilty or admit any facts at any time prior to trial. At trial, defendant argued that there was insufficient evidence for the jury to determine that

12

he intended to do bodily harm to Victim B if he did not comply. Despite the evidence that defendant pointed a loaded gun at Victim B, his lawyer argued in closing that defendant was merely making an empty threat. In making these arguments, defendant attacked a factual element of the offense—his intent. Like in *Williams*, defendant is thus ineligible to receive a reduction for acceptance of responsibility. *See also United States v. Herrera–Ordones*, 190 F.3d 504, 512–13 (7th Cir. 1999) (affirming denial of an acceptance of responsibility reduction to a defendant who went to trial solely to challenge the legal issue of venue because the defendant demonstrated through pre- and post-trial conduct that he had not accepted moral responsibility for his criminal actions).

V.  CONCLUSION

For the reasons set forth above, the government respectfully requests that this Court overrule defendant's objections to the PSR and impose a sentence of 160 months' imprisonment.

Respectfully submitted,

ANDREW S. BOUTROS
United States Attorney

By: *s/ Elie Zenner*
ELIE ZENNER
SIMAR KHERA
Assistant United States Attorneys
219 S. Dearborn Street
Chicago, Illinois 60604
(312) 697-4032